UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-00577-RJC-DCK

| | |
|---|---|
| US AIRLINE PILOTS ASSOCIATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ROGER VELEZ, on behalf of himself | ) |
| And all similarly situated former | ) |
| America West Pilots, and | ) |
| LEONIDAS, LLC, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

| | |
|---|---|
| EDDIE BOLLMEIER, BILL TRACEY | ) |
| and, SIMON PARROTT, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| GARY HUMMEL, STEPHEN | ) |
| BRADFORD, ROB STREBLE, | ) |
| STEVE SMYSER, ROBERT | ) |
| FREAR, COURTNEY BORMAN, | ) |
| and JANE DOE BORMAN, | ) |
| RONALD NELSON, PAUL DIORIO | ) |
| PAUL MUSIC, JOHN TAYLOR, | ) |
| JOE STEIN, PETE DUGSTAD, | ) |
| JAY MILKEY, and STEPHEN | ) |
| NATHAN, | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on Plaintiffs Eddie Bollmeier, Bill Tracey, and Simon Parrott's ("Plaintiffs") Motion for Temporary Restraining Order or Preliminary Injunction (the "Motion"), supporting memorandum, and exhibits, (Doc. No. 48; Case No. 3:15-cv-111,

Doc. No. 16), defendants Gary Hummel, Stephen Bradford, Rob Streble, Steve Smyser, John Taylor, Joe Stein, Pete Dugstad, Jay Milkey, and Stephen Nathan's ("Defendants") Responses in Opposition, supporting memoranda, and exhibits, (Case No. 3:15-cv-111, Doc. Nos. 24, 30), and Plaintiffs' Reply to Defendants' Responses in Opposition, (Id., Doc. No. 36).[1] On June 30, 2015, the Court conducted a hearing on Plaintiffs' Motion, and the issues are ripe for adjudication.

The Court finds Plaintiffs have established the requisite elements to obtain a preliminary injunction, and GRANTS in part and DENIES in part Plaintiffs' Motion for Preliminary Injunction.

## I. BACKGROUND

The facts, summarized here in briefest form, are as follows. In-fighting between the US Airways "East Pilots" and America West "West Pilots" began over ten years ago, soon after the two airlines merged to become the single airline known as US Airways, because the two pilot groups could not reach an agreement regarding the integration of their two differing seniority lists. (Id., Doc. No. 1 ¶¶11-12: Verified Complaint). When the two pilot groups reached an

---

[1] US Airline Pilots Association ("USAPA"), the plaintiff in this case, filed its declaratory judgment action against defendants Roger Velez, a US Airways "West Pilot," and Leonidas, LLC, an Arizona LLC formed by West Pilots. (Doc. No. 1). In the related matter of Bollmeier et al. v. Hummell et al., US Airlines West Pilots Eddie Bollmeier, Bill Tracey, and Simon Parrott filed their action against US Airlines "East Pilot" Gary Hummel and fourteen other East Pilots who are current or former USAPA officers. (Case No. 3:15-cv-111, Doc. No. 1). Bollmeier et al. v. Hummell et al. was consolidated into this case pursuant to the Court's Order Granting Consolidation of Cases, (Doc. No. 47), which resulted in two different sets of plaintiffs and defendants. Although consolidated, the Court will refer to the parties as they are listed in Bollmeier et al. v. Hummell et al. in order to avoid confusion. Therefore, the Court will use "Plaintiffs" to refer to plaintiffs Bollmeier, Tracey, and Parrott, and the Court will use "Defendants" to refer to defendants Gary Hummel et al. together with USAPA.

impasse regarding seniority list integration ("SLI") in 2007, the issue was submitted to arbitration, and the arbitrator issued an integrated list known as the "Nicolau Award." (Id. ¶12). In response to their dissatisfaction with the Nicolau Award and the then-current labor union, the East Pilots, who outnumbered the West Pilots by almost 3 to 1, formed the U.S. Airline Pilots Association ("USAPA"), and in 2008, USAPA became the certified bargaining representative for both the East and West Pilots. (Id. ¶¶14-15). As the official labor union for all US Airways pilots, USAPA collected dues from all the pilots as a condition of employment. (Id. ¶¶5, 15). Despite the Nicolau Award and the collective representation through USAPA, the East and West pilots continued to disagree over the SLI process, and the two groups have been involved in protracted litigation ever since. See, e.g., Addington v. USAPA, 791 F.3d 967 (9th Cir. 2015); Addington v. USAPA, 606 F.3d 1174 (9th Cir. 2010); US Airways, Inc. v. Addington, No. CV-10-01570-PHX-ROS, 2012 WL 5996936 (D. Ariz. Oct. 11, 2012).

In September, 2014, USAPA lost its certification as the collective representative for US Airways pilots, which normally would have triggered the dissolution of USAPA and the distribution of its remaining assets after payment of debts to its then-active members in good standing. (Case No. 3:15-cv-111, Doc. No. 1 ¶¶25-26: Verified Complaint). Under a provision of the USAPA constitution, however, USAPA's national officers elected to defer dissolution of the organization on September 16, 2014, upon a determination that circumstances may exist necessitating "collective legal action on behalf of the pilot group, including, but not limited to, representation of the seniority integration process." (Id. ¶¶28, 31). Additionally pursuant to the USAPA constitution, the USAPA officers determined that USAPA would not make any interim distributions of its assets to its members and that USAPA would retain all of its funds in order to

advance the collective legal actions which had necessitated the deferral of dissolution. (Id.). On the same day its officers decided to defer dissolution, USAPA commenced an action for Declaratory Judgment in North Carolina Superior Court, Mecklenburg County, seeking declarations affirming its decision to defer USAPA's dissolution and distribution of its assets. (Doc. No. 1). The defendants in that action, Roger Velez and Leonidas, LLC, removed the case to this Court on October 16, 2015. (Id.).

On February 23, 2015, Plaintiffs filed suit against Defendants, all of whom were USAPA officers, under Title V of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(b), challenging USAPA's use of and seeking return of the assets for which USAPA's officers had deferred distribution. (Bollmeier et al. v. Hummell et al., Case No. 3:15-cv-111, Doc. No. 1: Verified Complaint). On March 27, 2015, Plaintiffs filed the instant Motion in both the Bollmeier et al. v. Hummell et al. case, (Case No. 3:15-cv-111, Doc. No. 16), and in this case, (Doc. No. 48). Upon a joint motion by the parties, Bollmeier et al. v. Hummell et al., Case No. 3:15-cv-111, was consolidated into this case pursuant to the Court's Order Granting Consolidation of Cases on June 25, 2015. (Doc. No. 47).

Through their Motion for preliminary injunctive relief, Plaintiffs seek to: (i) prohibit USAPA and Defendants from spending any "USAPA funds obtained from the collection of dues and assessments of US Airways pilots during the period that USAPA was the exclusive bargaining agent of US Airways pilots in support of activities of any kind;" (ii) require USAPA to provide an accounting of its books and records from the period of January 1, 2013, to the present; and (iii) prevent the dissolution of USAPA without prior written notice to Plaintiffs and approval by the Court. (Doc. No. 62-9). At the June 30, 2015 hearing on Plaintiffs' Motion, the

4

Court instructed the parties to meet and confer to determine proposed temporary restraints upon which they could agree. The parties were able to agree that: (1) USAPA will not spend any more money on merger- or seniority-related matters, (Doc. No. 61 at 6), and (2) USAPA will not be dissolved without prior written notice to Plaintiffs and approval of the Court, (Doc. No. 61-2). The parties, however, continue to disagree about: (1) what specific parties should be subject to the injunction; (2) the scope of matters upon which USAPA may expend funds; (3) whether USAPA should be required to provide an accounting; and (4) what amount of security should be required for the issuance of the injunction.

## II.     DISCUSSION

Federal Rules of Civil Procedure 65(a) and (b) provide that, upon a proper showing, a court may issue a preliminary injunction with notice to the adverse party and that a court may issue a temporary restraining order without notice to the adverse party. Fed. R. Civ. P. 65(a)-(b). In this case, Defendants have received notice, filed briefs opposing Plaintiffs' Motion, and presented arguments opposing the Motion at a hearing. "[W]hether an interlocutory injunction entered is labeled a TRO or a preliminary injunction is not of particular moment, so long as the party opposing the injunction is given notice and an opportunity to oppose that is commensurate with the duration of the injunction." Ciena Corp. v. Jarrad, 203 F.3d 312, 320 (4th Cir. 2000). Accordingly, the Court regards as moot Plaintiffs' Motion for Temporary Restraining Order under Rule 65(b) and focuses exclusively on their Motion for Preliminary Injunction under Rule 65(a).

A preliminary injunction is an extraordinary remedy, the primary function of which is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit. In re

5

Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 542 (1987). An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course. Weinberger v. Romero-Barcelo, 456 U.S. 305, 313 (1982) ("[A] federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law."). A preliminary injunction is to be granted only if no adequate remedy at law exists and the moving party clearly establishes the requisite entitlement. See Federal Leasing, Inc. v. Underwriters at Lloyd's, 650 F.2d 495, 499 (4th Cir. 1981).

A plaintiff seeking a preliminary injunction must establish four elements, including that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). A plaintiff must demonstrate more than just a "possibility" of irreparable harm and a strong showing of likelihood of success on the merits. Winter, 555 U.S. at 22.

A. Likelihood of Success on the Merits

The Court finds that Plaintiffs are likely to succeed on the merits of their claims. Specifically, the Court finds that Plaintiffs furnished sufficient evidence of the written demands sent to USAPA and its governing officers. After reviewing Plaintiffs' Verified Complaint and other exhibits, the Honorable Max O. Cogburn, Jr. found that good cause existed to permit Plaintiffs' action to proceed. See (Case No. 3:15-mc-35, Doc. No. 2). The Court finds that Plaintiffs made a demand that USAPA or its governing officers initiate an action, that they

6

secured permission from this Court to bring the instant action, and that they are seeking "appropriate relief for the benefit of the labor organization." See 29 U.S.C. § 501(b); Reed v. United Transp. Union, 633 F. Supp. 1516, 1527 (W.D.N.C. 1986) rev'd on other grounds, 828 F.2d 1066 (4th Cir. 1987). Accordingly, the Court finds that it has subject matter jurisdiction over the claims in this case and that Plaintiffs have satisfied the procedural requirements under the LMRDA. The Court further finds that the doctrine of res judicata does not apply to bar this action.

Defendants assert that USAPA is not a labor organization under the LMRDA. The Court disagrees. The LMRDA defines a labor organization as one that is "engaged in an industry affecting commerce" and that "exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment." 29 U.S.C. § 402(i). Defendants do not dispute that USAPA meets the first prong of the definition as they admit USAPA is "engaged in an industry affecting commerce . . . by acting as the representative of the former US Airways pilots in SLI proceedings and pending litigation by/against USAPA." (Case No. 3:15-cv-111, Doc. No. 24 at 17 (internal quotation marks omitted)). Defendants further assert, in other sections of their arguments, that the dissolution of USAPA and the distribution of its funds were deferred because USAPA's officers determined that circumstances existed which necessitated collective legal action on behalf of the pilot group, and Defendants argue that "collective legal action" includes advancing USAPA's position in the SLI process and pending litigation. (Id. at 20-21).

In International Association of Machinists and Aerospace Workers, AFL-CIO v. Schimmel, the Eighth Circuit found that, although a decertified union had no collective

7

bargaining agreement, no members, and no further duties of representation, the LMRDA applied to the former union, and the Eighth Circuit held that former union members, who had brought claims under the LMRDA, were entitled to a preliminary injunction prohibiting the former union from expending additional funds. 128 F.3d 689, 691 (8th Cir. 1997). Similarly, the evidence in this case shows that USAPA was formed as a labor organization, was certified and operated as a labor organization, and has not ceased acting or operating as a labor organization. The very reason for USAPA's continued existence is to engage in collective action on behalf of its constituents, which necessarily entails dealing with employers regarding employment issues. Although it is no longer the bargaining representative for the US Airways pilots, and although it may not currently deal directly with an employer in a certified capacity, similar to the decertified union in Schimmel, USAPA existed and continues to exist for purposes of dealing with employers; therefore it is a labor organization. The fact that USAPA only exists currently as an unincorporated nonprofit organization does not remove it from the definition of a labor organization nor does it remove USAPA from the jurisdiction of the LMRDA. See Hawaii Gov't Employees Ass'n, Am. Fed'n of State, Cnty. & Mun. Employees, Local 152 v. Martoche, 915 F.2d 718 (D.C. Cir. 1990) (holding that a nonprofit educational organization was subject to the LMRDA). Therefore, the Court finds that USAPA satisfies the definition of a labor organization under the LMRDA and, consequently, that USAPA is subject to the requirements of the LMRDA.

The Court is also not persuaded by Defendants' arguments that Plaintiffs are not members of the labor organization. Plaintiffs were members in good standing as of USAPA's decertification and no evidence has been presented that Plaintiffs have voluntarily withdrawn

from or been expelled or suspended from USAPA; therefore, they continue to be members. See Erkins v. Bryan, 663 F.2d 1048, 1052 (11th Cir. 1981). Pursuant to each term's definition under the LMRDA, 29 U.S.C. §§ 402(i)-(j), (o), the Court finds that USAPA is a labor organization and Plaintiffs are members of USAPA, which establishes Plaintiffs' standing to bring their claims and renders the LMRDA applicable to USAPA.

Plaintiffs allege that Defendants have violated Title V of the LMRDA by authorizing and making expenditures in violation of the duties imposed upon them by USAPA's constitution. USAPA's constitution only permits its agents to spend funds on "collective legal action on behalf of the pilot group" if the funds are not distributed to the members upon decertification. Defendants violate their fiduciary duties, and section 501(a) of the LMRDA, if they spend USAPA funds for any other reason. The issue, therefore, is the meaning of "collective legal action on behalf of the pilot group." Such actions on behalf of a group must be for purposes of advancing the interests of the group as a whole, or in this case, the pilot group as a whole. Therefore, any actions, or expenditures supporting such actions, taken on behalf of a distinct subset of a group which are directly adverse to another substantial subset of that group cannot be taken on behalf of the group as a whole. Plaintiffs allege, and Defendants freely admit, that USAPA's actions are meant to advance only the interests of the East Pilots to the detriment of the West Pilots. See (Case No. 3:15-cv-111, Doc. No. 24 at 15-16). These actions, which are not taken on behalf of the pilot group as a whole, are likely improper under USAPA's constitution and violative of the LMRDA. Defendants have not provided sufficient evidence to dispute Plaintiffs' claims at present, and therefore, the Court finds that Plaintiffs have asserted a valid claim under the LMRDA and are likely to succeed on the merits.

B. Irreparable Harm

Plaintiffs have likewise made a clear showing of irreparable harm. USAPA's funds were derived from dues collected from all US Airways pilots, including Plaintiffs, as a condition of employment. Under USAPA's constitution, if such funds are not used to advance legitimate collective legal action, they must be returned to the members from whom the funds were collected in the first place. Now that USAPA is no longer the certified exclusive representative for any pilot group, it no longer collects membership dues, and its revenue stream has been cut off. USAPA's continued expenditure of its finite funds, which are the object of this litigation, can only deplete a treasury that is unable to be replenished going forward. Therefore, the Court finds that Plaintiffs have shown they are likely to suffer irreparable harm in the absence of preliminary relief.

C. Balance of Equities

The balance of equities often presents considerable questions for the Court, especially as an injunction risks foreclosing legitimate business activities of a defendant. The Court finds in this case, however, that Plaintiffs have provided sufficient evidence to tip the balance in their favor. Plaintiffs seek to enjoin USAPA and its agents from wrongfully spending funds which were derived in significant part from dues paid by Plaintiffs. Absent an injunction, these funds may be significantly, if not altogether, depleted before this case is concluded, which would result in an inequity against Plaintiffs. On the other hand, an injunction prohibiting USAPA's use of its funds to participate in the SLI process risks little to no harm to Defendants as Defendants, like the Plaintiffs, could seek funding from other sources and raise funds through private channels in order to further finance their continued involvement in the SLI process. Contrary to Defendants'

contentions, the Court finds that this injunction would not make it impossible for USAPA to continue to operate. Therefore, the Court finds that the balance of equities tips in favor of Plaintiffs.

   D. <u>Public Interest</u>

Finally, the Court finds that the public interest is furthered by the granting of a preliminary injunction. The public has an interest in seeing that agreements are enforced. <u>See</u> <u>UBS Painwebber, Inc. v. Aiken</u>, 197 F. Supp. 2d 436, 448 (W.D.N.C. 2002). As both parties have agreed, this interest includes enforcing union constitutions. <u>Loretangeli v. Critelli</u>, 853 F.2d 186, 196 (3d Cir. 1988). In finding that Plaintiffs have established a likelihood of success on the merits on their LMRDA claim, the Court finds that Defendants have likely violated the USAPA constitution. Therefore, the Court finds that an injunction is in the public interest.

Having considered the four requisite elements for preliminary injunctive relief and having found that Plaintiffs have established all four elements, the Court finds that entry of a preliminary injunction is necessary to protect Plaintiffs from ongoing and irreparable harm during the pendency of this action. Such harm to Plaintiffs significantly outweighs any harm Defendants might incur as a result of the entry of the injunction.

   E. <u>Parties to be Enjoined</u>

It is well-settled that a business entity acts only through its agents, such as its employees, officers, and directors. <u>See</u> <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, 166 (2001). As such, an enjoined entity's agents may also be individually enjoined. As Defendants point out, the USAPA constitution requires that all notes, checks, and other negotiable instruments must be signed by one of its National Officers. (Doc. No. 61 at 9 n.6). Thus, an officer acting

individually pursuant to his or her perceived duties as an officer, may authorize the expenditure of USAPA funds in contravention to this preliminary injunction. The Court finds, therefore, that it is necessary to enjoin USAPA as well as any officer, employee, or agent of USAPA.

F. Scope of Prohibited Expenditures

The funds USAPA has been using to participate in merger- and seniority-related matters and to further litigation were derived, in large part, from dues paid by Plaintiffs and other West Pilots. USAPA should not be permitted to use funds derived from West Pilots to the detriment of the West Pilots. Defendants previously argued that USAPA had incurred less than $15,000 in expenses prior to June 29, 2015. (Doc. No. 58). Defendants now contend, however, that they should be permitted to pay expenses incurred through June 30, 2015, in an amount of $500,000. (Doc. No. 61-2 at 2). The Court finds this amount unreasonable and will not permit USAPA to make these expenditures out of its treasury. Therefore, the Court finds that, aside from a reasonable amount expended related to USAPA's Petition for Re-hearing En Banc in Addington v. USAPA, _ F.3d _, 2015 WL 3916665 (9th Cir. June 26, 2015),[2] not to exceed $50,000, USAPA and any officer, employee, or agent of USAPA shall be enjoined from spending any more money on merger- or seniority-related matters.

G. Request for an Accounting

A preliminary injunction serves to maintain the status quo pending a final determination on the merits of a case and to preserve the object of the litigation so that ultimate relief is not rendered ineffectual. See Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 422 (4th

---

[2] In resolving this Motion, the Court takes judicial notice of the Ninth Circuit's June 26, 2015 opinion as well as the Ninth Circuit's August 24, 2015 order denying USAPA's Petition for Rehearing and Petition for Rehearing En Banc.

Cir. 1999). In this case, a demand for an accounting is not necessary to preserve the status quo nor would it further the preservation of USAPA funds. Injunctive relief is not intended to serve as an independent discovery tool used as a bludgeon against an enjoined party. Such information, therefore, is more appropriately exchanged through normal channels of discovery. Under the circumstances at this time, the Court finds that requiring an accounting of USAPA's books and records is not a proper requirement for injunctive relief; thus, Plaintiffs' request for an accounting is DENIED.

H. The Unapproved Dissolution of USAPA

In light of the Court's findings that injunctive relief is warranted in this case, the Court GRANTS this part of Plaintiffs' Motion for Preliminary Injunction. USAPA shall not be dissolved without prior written notice to Plaintiffs and approval of the Court.

I. Bond Requirement

Rule 65(c) specifies that a "court may issue a preliminary injunction . . . only if the movant gives security." Fed. R. Civ. P. 65(c). The purpose underlying Rule 65(c)'s security requirement, however, "is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction." Hoechst Diafoil Co., 174 F.3d at 421 n.3. The Court has discretion to set the bond in any amount it considers proper or to waive the bond requirement altogether. Pashby v. Delia, 709 F.3d 307, 332 (4th Cir. 2013). The amount of security required depends on the probability and "gravity of the potential harm to the enjoined party," and a court is justified in waiving the bond requirement when it finds that the likelihood of harm to the enjoined party is remote. Hoechst Diafoil Co., 174 F.3d at 421 n.3. In its analysis of the balance of equities, the Court found there is little to no risk that Defendants would be

13

harmed as a result of an improvidently issued injunction. Furthermore, the funds that are the object of this litigation and the object of Plaintiffs' request for injunction will remain under USAPA's care throughout the pendency of this case. Therefore, the Court, in its discretion, waives the security requirement of Rule 65(c) and will not require Plaintiffs to post a bond for the issuance of this preliminary injunction.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that Plaintiffs' Motion for Preliminary Injunction, (Doc. No. 48), is **GRANTED in part and DENIED in part**:

1. USAPA and any officer, agent, or employee of USAPA are hereby **ENJOINED** from authorizing, permitting, or causing USAPA to spend any USAPA funds on any type of expenditure relating to, whether directly or indirectly, any merger- or seniority-related matter, including but not limited to any litigation directly or indirectly related to any merger- or seniority-related matter, during the pendency of this case, except that USAPA shall be permitted to expend a reasonable amount of funds relating only to the filing of the Petition for Re-hearing En Banc in Addington v. USAPA, _ F.3d _, 2015 WL 3916665 (9th Cir. June 26, 2015), not to exceed $50,000;

2. Plaintiffs' Motion for Preliminary Injunction to require an accounting of USAPA's books and records is hereby **DENIED**;

3. USAPA and any officer, agent, or employee of USAPA are hereby **ENJOINED** from dissolving USAPA without prior written notice to Plaintiffs and approval of this Court during the pendency of this case; and

4. No bond is required for the issuance of this preliminary injunction.

Signed: August 26, 2015

Robert J. Conrad, Jr.
United States District Judge