# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:14-cv-00577-RJC-DCK

| | |
|---|---|
| US AIRLINE PILOTS ASSOCIATION, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> ROGER VELEZ, on behalf of himself ) <br> and all similarly situated former ) <br> America West Pilots, and ) <br> LEONIDAS, LLC, ) <br> ) <br> **Defendants.** ) | **ORDER** |

**THIS MATTER** comes before the Court on the Parties'[1] Joint Motion for Final Approval of Class Action Settlement Agreement and Release ("Joint Motion"), (Doc. No. 121), and the associated memoranda, declarations, and exhibits, (Doc. Nos. 122, 123, 124, 125, 126, 127, and 128). Having carefully reviewed and considered the memorandum, exhibits, and declarations submitted by the Parties in support of the Joint Motion, and having conducted a Fairness Hearing on August 30, 2016, the Court finds that the Joint Motion should be **granted**.

## I.  BACKGROUND

The cases before the Court involve claims for declaratory and injunctive relief and allege violations of Title V of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(b), with respect to the validity of the actions taken by the U.S. Airline Pilots

---

[1] All capitalized terms used in this Order and not defined herein shall have the meanings assigned to them in the Settlement Agreement and Release.

Association ("USAPA") National Officers to defer dissolution and distribution of assets and related decisions.

On September 16, 2014, USAPA commenced <u>USAPA v. Velez, et al.</u>, 3:14-cv-577-RJC-DCK ("USAPA DJ Action"), a declaratory judgment action against a class of West Pilots and Leonidas, LLC, seeking declarations as to Roger Velez, a West Pilot, on behalf of himself and a putative similarly situated class of West Pilots. They in turn counterclaimed and commenced a third-party complaint against USAPA and USAPA officers in their official capacities, seeking, among other things: reimbursement of money that USAPA spent to support the USAPA Merger Committee after September 16, 2014 in the approximate sum of $1.8 million; West Pilots' allocation of the merger dues increase (in the approximate sum of $1.4 million); and West Pilots' share of the $1.3 million reimbursement from American Airlines (in the approximate amount of $500,000).

On February 23, 2015, three West Pilots commenced <u>Bollmeier v. Hummel, et al.</u>, 3:15-cv-00111-RJC ("LMRDA action I"), arising under Title V of the LMRDA against current and former USAPA officers and members of USAPA's governing body, the Board of Pilot Representative ("BPR"), in their individual capacities, alleging, *inter alia*, that defendants breached their fiduciary duties by expending USAPA funds after it was decertified on matters that were not collective legal action on behalf of the pilot group. On October 12, 2015, the same <u>Bollmeier</u> plaintiffs commenced <u>Bollmeier v. Frear, et al.</u>, 3:15-cv-00480-RJC ("LMRDA action II"), which is identical to LMRDA action I, and brought against four former USAPA BPR members who had not appeared in LMRDA action I. The individual defendants in LMRDA action I and LMRDA action II asserted claims for indemnification against USAPA under provisions of the USAPA Constitution and Bylaws. LMRDA action I and LMRDA action II

were consolidated with the USAPA DJ Action, and are hereinafter collectively referred to as the Consolidated Actions. (Doc. Nos. 47, 78).

On June 26, 2015, the Ninth Circuit issued its decision in <u>Addington v. U.S. Airline Pilots Ass'n</u>, 791 F.3d 967 (9th Cir. 2015), finding that USAPA breached its duty of fair representation to West Pilots, remanded to the district court with instructions to enjoin USAPA from participating in seniority list integration proceedings unless it advocated for the Nicolau Award, and to consider West Pilots' claim for attorneys' fees. On August 27, 2015, this Court issued a preliminary injunction finding there was the likelihood of success on the merits of the LMRDA claim in LMRDA action I and enjoined USAPA from spending any money on seniority-related matters and dissolving without notice and the Court's consent. (Doc. No. 75).

In December 2015, the West Pilots filed with the United States District Court for the District of Arizona their application for attorneys' fees in the <u>Addington</u> Cases,[2] seeking the total sum of approximately $3.7 million.

On February 10, 2016 the Court received a report from Mediator Gary S. Hemric, in which Mr. Hemric stated that a settlement in principle had been reached. On April 11, 2016, the Parties submitted a Joint Motion for an Order Granting Conditional Class Certification, Preliminary Approval of Settlement, and Approval of Notice (Doc. No. 115), and the Court granted that order on April 22, 2016. As part of that Order, there was an 80-day window for class members to submit objections and a Fairness Hearing was scheduled for August 30, 2016.

On May 6, 2016, 5,222 copies of the Class Notice were mailed via U.S. mail to Settlement Class members. On May 8, 2016, USAPA e-mailed the Class Notice to Settlement

---

[2] The <u>Addington</u> Cases refers to <u>Addington v. USAPA et al.</u>, No. 2:08-cv-1633-NVW (D. Ariz.); <u>US Airways v. Addington, et al.</u>, 2:10-cv-1570-ROS (D. Ariz.); and <u>Addington v. USAPA et al.</u>, 2:13-CV-471-ROS (D. Ariz.), collectively.

Class members for whom USAPA had or had access to an email address, which resulted in 4,718 e-mails.  In accordance with the Court's Preliminary Approval Order, the Class Notice and Settlement Agreement and Release were posted on www.usairlinepilots.org and www.cactuspilot.com.  The Class Notice fully informed Settlement Class members of their rights with respect to the Settlement Agreement and Release, including the right to object to the Settlement Agreement and Release.  Furthermore, the Class Notice met the statutory requirements of notice under the circumstances, including the individual notice to all members of the Settlement Classes who could be identified through reasonable effort, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirement of due process, and the notice provisions of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

On August 8, 2016, the Parties submitted the motion before the Court today—the Joint Motion for Final Approval of Class Action Settlement Agreement and Release, (Doc. No. 121). Additionally, the Court has received the declaration of John Owens, attesting to the mailing of the Class Notice and the posting of the Internet/Publication Notice in accordance with the Preliminary Approval Order, and has received the declarations of Cory Rogers, Stanley Silverstone, Narendra Ghosh and Marty Harper attesting to the inquiries, objections, and responses to the Class Notice received, and the requests to speak at the Fairness Hearing.  The Court also has received a declaration and supplemental declaration attesting to the mailing of the notices pursuant to the Class Action Fairness Act of 2005 ("CAFA").

In total, fourteen individuals filed timely objections to the Settlement Agreement.  On August 30, 2016, the Court held a Fairness Hearing in which objectors were given an opportunity to be heard regarding their objections.  Andrew Riolo, Esq. on his own behalf, Stephen Bourtin, Esq. on behalf of eleven East Pilot Settlement Class members, and Frederick

Brown on his own behalf were all heard. Jose Gonzalez, the only remaining objector, did not appear, but the Court notes that his objections were identical to those of Mr. Brown and were duly considered in evaluating the fairness, reasonableness, and adequacy of the proposed settlement.

## II. DISCUSSION

In class action cases, any settlement of class claims must be approved by the District Court. Fed. R. Civ. P. 23(e). Courts generally follow a two-step procedure in approving class settlements:

> First, the court engages in a preliminary approval analysis "to determine whether the proposed settlement is within the range of possible approval or, in other words, whether there is probable cause to notify the class of the proposed settlement." Second, after preliminary approval is granted and the class notified, the court holds a "fairness hearing," where all interested parties may be heard on the proposed settlement. After the fairness hearing, if the court concludes that the proposed settlement is "fair, reasonable, and adequate," it will give final approval to the settlement.

In re Red Hat, Inc. Sec. Litig., No. 5:04-cv-473-BR, 2010 WL 2710517, at *1 (E.D.N.C. June 11, 2010), report & rec. adopted, 2010 WL 2710446 (E.D.N.C. July 8, 2010) (quoting Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 855 F. Supp. 825, 827 (E.D.N.C. 1994)).

Here, the Court previously preliminarily approved the settlement and found that class certification under FRCP 23(b)(2) is appropriate in the settlement context. Now, the Court must decide whether the settlement is fair, reasonable, and adequate.

The Fourth Circuit has established a bifurcated analysis for determining final approval of class action settlements, in which district courts are to analyze factors relating to the fairness of the settlement and factors relating to the adequacy of the settlement. In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158–59 (4th Cir. 1991). The Supreme Court has cautioned that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." Carson v. Am. Brands, Inc., 450 U.S. 79, 88 n.14 (1981). Because the object of

settlement is to avoid, not confront, the determination of contested issues, the approval process should not be converted into an abbreviated trial on the merits. See Flinn v. FMC Corp., 528 F.2d 1169, 1172–73 (4th Cir. 1975) (noting that the settlement hearing is not "a trial or a rehearsal of the trial"). Instead, courts have consistently held that the function of a judge reviewing a settlement is to determine whether the proposed settlement is fundamentally fair, adequate and reasonable, see United States v. North Carolina, 180 F.3d 574, 581 (4th Cir. 1999), "without modifying [the settlement's] terms, and without substituting its business judgment for that of counsel, absent evidence of fraud or overreaching," In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (internal quotation marks and citations omitted). Finally, "[t]here is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors." Lomascolo v. Parsons Brinckerhoff, Inc., No. 1:08-CV-1310 (AJT/JFA), 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (internal quotation marks omitted).

A. Fairness of the Settlement

In analyzing fairness, courts must determine whether:

[T]he settlement was reached as a result of good-faith bargaining at arm's length, without collusion on the basis of (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [subject] area of [the] class action litigation.

Jiffy Lube, 927 F.2d at 158–59.

The Settlement Agreement would put to final rest eight years of litigation between the East Pilots and West Pilots. These cases had been litigated with extensive motion practice by the time settlement was reached. Prior to settlement, the Parties engaged in a combination of formal and informal discovery, and counsel for the Parties conducted investigation relating to the potential claims and the underlying events and transactions. Although discovery has not been completed, it is clear that after numerous cases and years of litigation, the Parties are well aware of the important

6

facts and the strength of their cases. The Parties hired an independent mediator, engaged in mediation over three days in January 2016, and continued negotiating in the weeks following the mediation sessions. It was only after those extensive negotiations that the Parties ultimately consummated the Settlement Agreement. It appears that negotiations were at arm's length, and there are no signs of collusion. Counsel for both sides have been representing their respective party in multiple actions related to these issues for many years now, and they have ample experience in the type of case at issue here. Consequently, all the fairness factors favor final approval of the Settlement Agreement.

   B. Adequacy

In analyzing adequacy, courts must weigh the following factors against the settlement amount:

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

Jiffy Lube, 927 F.2d at 159.

It is clear, based in part on the many years of litigation amongst the Parties, that there are viable competing claims that could have been litigated over years. Each of the Parties have weighed the ultimate success on the merits and the risks of establishing liability inherent in litigation. Each party thinks its case is strong, but recognizes the difficulties in proving and defending its claims. The anticipated duration of these consolidated cases weighs heavily in favor of settlement. The Parties have been litigating for over eight years and are still in the discovery process. The ordeal of additional discovery, dispositive motions, trial, and appeal would deplete the USAPA treasury. The hemorrhaging has to stop. Similarly, the solvency of the defendants and the likelihood of recovery weighs heavily in favor of settlement. USAPA is

7

no longer a certified union. Years of continued litigation would eliminate the dwindling corpus that USAPA currently has and render any judgment or future settlement meaningless. Finally, the Court finds that the degree of opposition to the settlement is minimal and the support is significant. Although there were timely objections from fourteen individuals (three sets of unique objections), the Court finds the number to be insignificant when considering a class size of 5,222 individuals. Indeed, less than .3% of the class timely objected. Furthermore, as discussed below, none of the objections were meritorious. Accordingly, the Court finds that the adequacy factors all favor approval of this settlement.

C. Objections

As noted above, the Court also received and reviewed a total of ten timely objections from three different objecting parties consisting of fourteen individuals.[3] The Court addresses each of those objections in turn.

   i.   Riolo Objections

Mr. Riolo filed four written objections. At the Fairness Hearing, Mr. Riolo presented and focused on his objection that the Class Notice was inadequate. Mr. Riolo based this objection on the fact that he believes himself to be a class member, but he did not receive notice through U.S. mail. The Parties responded that based upon the information provided directly to them by U.S. Airways, they believed Mr. Riolo to be retired, and therefore he was not a member of the class. Mr. Riolo submitted evidence appearing to indicate that he did not retire until November 2014 and was employed by U.S. Airways in September 2014, making him a class member. The Court finds

---

[3] 24 individuals filed objections after July 11, 2016, the final day to submit objections. The Court dismisses these objections as untimely. Nevertheless, the Court notes that all of these objections were identical to the timely objections submitted by Mr. Brown and Mr. Gonzalez, which are considered below.

8

that the Parties' process of mailing, e-mailing, and posting notice on two different websites was reasonable and reflects best efforts to provide notice to class members. Furthermore, it is clear that Mr. Riolo did receive notice and was able to object in a timely fashion. Therefore, Mr. Riolo's objection is overruled and his request for a 90-day stay is denied.

In his written objections, Mr. Riolo also presented other objections. Mr. Riolo objected to the use of USAPA treasury funds to settle the various claims against USAPA, which Mr. Riolo argued should be paid by the USAPA officers, former officers and BPR members. Mr. Riolo's objection is misguided for two reasons. First, no individual parties were found to have breached a fiduciary duty or a duty of fair representation, and USAPA contends that all implicated USAPA officers, former officers and BPR members were always acting in their official capacities on behalf of USAPA. Second, the settlement amount of $5.5 million is not intended to be broken down into different sub-amounts to settle the various claims. The $5.5 million represents a global settlement and settles the Consolidated Action and the <u>Addington</u> Cases, including counterclaims, third-party claims, and potential claims that do not relate specifically to the LMRDA actions or the claims for attorneys' fees in the <u>Addington</u> Cases.

Additionally, Mr. Riolo objected on the grounds that non-members represented by USAPA who paid agency fees instead of membership dues should receive a refund of their fees that were used by USAPA to litigate these cases. The Court finds that a union's litigation related to its bargaining function is chargeable to objecting non-members and that the expenses related to the <u>Addington</u> Cases has already been determined by an arbitrator to be chargeable to non-member fee payers.

    ii.    <u>Bourtin Objection</u>

Mr. Bourtin, on behalf of eleven pilot-plaintiffs in a current civil action against USAPA and the USAPA Merger Committee, among other defendants, <u>Karas, et al. v. Allied Pilots Association; East Pilots Seniority Integration Committee; US Airways, Inc., American Airlines, Inc.; U.S. Airline Pilots Association; USAPA Merger Committee</u>, Case No. 16-cv-00168-TJM (N.D.N.Y.), objects to the Settlement Agreement because it would leave USAPA and the USAPA Merger Committee without any assets and render them unable to satisfy a potential judgment against them in the <u>Karas</u> matter.

This Court is not the proper forum for Mr. Bourtin's objection. There are legal venues and processes that Mr. Bourtin, on behalf of his clients, can pursue in order to help secure payment on a possible judgment against USAPA or its merger committee. The Court's current purpose is to determine whether the Settlement Agreement is fair, reasonable, and adequate, and the <u>Karas</u> matter has no bearing on that question. Additionally, the Court notes that Mr. Bourtin's clients have not obtained a judgment against USAPA or its merger committee, USAPA and its merger committee are not the only defendants in the <u>Karas</u> litigation, and finally, that the mutual release in the Settlement Agreement does not include or apply to the <u>Karas</u> litigation. Therefore, Mr. Bourtin's objection, on behalf of his eleven individual clients, is overruled.

    iii.   <u>Brown and Gonzalez Objections</u>

Mr. Brown and. Mr. Gonzalez each filed a set of five identical objections.[4] First, they argue that the representatives and class counsel for the East Pilot Settlement Class are inadequate representatives of the class because: (1) class counsel represents individual defendant officers in

---

[4] The objections were submitted by William Wilder, Esq. on behalf of Mr. Brown and Mr. Gonzalez. On August 26, 2016, the Court disqualified Mr. Wilder from representing any objectors due to his previous and related representation of USAPA. Mr. Wilder was also counsel for the 24 individuals who filed untimely objections.

the case; therefore, it has a conflict of interest; and (2) John Owens and Bob Burdick are either officers or representatives of USAPA, and therefore, have a conflict. Upon further explanation by counsel for USAPA and the East Pilots Settlement Class regarding mediation and settlement negotiations, the Court is convinced that Mr. Owens and Mr. Burdick's interests in their roles with USAPA and the BPR, respectively, and with the East Pilots Settlement Class were aligned and no conflict sufficient for disqualification as class representatives existed. Accordingly, this objection is overruled.

Second, Mr. Brown and Mr. Gonzalez argue that the Class Notice was inadequate because it did not disclose necessary information. The Notice advised Class Members of the terms of the proposed settlement, attached the Settlement Agreement and the Parties' signed Memorandum of Settlement, and advised class members of their right to submit comments and objections to the settlement and appear at the Fairness Hearing. The Notice was properly disseminated, using a list of pilots provided by U.S. Airways, and delivered via U.S. mail, e-mail, and postings on two different websites. In the event that Class Members had any questions regarding the Settlement Agreement, the Notice invited and provided the contact information (address, telephone number, fax number, and e-mail address) of Class Counsel for the East Pilot Settlement Class and the West Pilot Settlement Class. Class Counsel for East and West, collectively, received two phone calls and one written inquiry. The Notice appears to be sufficient and this objection is overruled.

Third, Mr. Brown and Mr. Gonzalez challenge the fairness of the Settlement Agreement, claiming it is unfair to East Pilots. This objection was the focal point of Mr. Brown's presentation at the Fairness Hearing. At its core, this objection is based on the fact that East Pilots outnumbered West Pilots in USAPA by approximately three to one, and therefore, were responsible for a larger portion of dues being paid to USAPA. Yet, the proposed settlement pays

$5.5 million to the West Pilot Settlement Class, leaving only approximately $1.6 million in the USAPA treasury to be distributed to the East Pilot Settlement Class. Mr. Brown's passionate articulation of this objection at the Fairness Hearing is well-taken, but the Court is persuaded by results of the mediation and the representation from counsel for each of the Parties that the proposed settlement agreement is the best deal to resolve the claims against USAPA and its representatives. The west pilots were seeking damages and fees exceeding the USAPA treasury. USAPA not only resolves all claims current and potential related to this action, but also saves approximately $1.6 million in its treasury to be distributed to the East pilots. Without this settlement, the East Pilots could easily be walking away at the end of this litigation with no financial distribution whatsoever.

Mr. Brown and Mr. Gonzalez's fourth and fifth objections relate to substantive arguments under the LMRDA. They argue that the settlement violates the LMRDA because it settles improper claims brought under the LMRDA. They also contend that the LMRDA Plaintiffs are improper plaintiffs who cannot maintain the LMRDA claims alleged. Both of these objections go to the merits of the claims against USAPA and its representatives, which the Court must only consider in evaluating the strengths and weaknesses of each side as it relates to the fairness and adequacy of the settlement. "Appellate courts have admonished trial courts against turning the hearing into a complete trial on the merits or even resolving unsettled legal issues." Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 855 F. Supp. 825, 828 (E.D.N.C. 1994) (citing Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir. 1975)); see also Carson v. Am. Brands, Inc., 450 U.S. 79, 88 (1981) ("[In judging the fairness of a settlement, District courts] do not decide the merits of the case or resolve unsettled legal questions."). Nevertheless, it is important that this Court avoid undermining public policy by granting approval to a settlement that awards remedies

that would not be possible if the case were fully litigated under the underlying law. Here, the Court finds nothing in the Settlement Agreement that is contrary to or prohibited by the LMRDA. Mr. Brown and Mr. Gonzalez's most convincing arguments on this front relate to the payment of attorneys' fees to the West Pilot Settlement Class and to individual officers, former officers, and BPR representatives. Despite assertions to the contrary, it is clear that attorneys' fees and indemnification can be granted and are not entirely precluded by the LMRDA. See Monzillo v. Biller, 735 F.2d 1456, 1463 (D.C. Cir. 1984) ("The LMRDA permits a trial judge to award attorneys' fees to the party bringing suit under section 501(b) of the Act. . . . [A]ttorneys' fees can be awarded under this provision even where there has been no monetary recovery."); Kerr v. Shanks, 466 F.2d 1271, 1278 (9th Cir. 1972); Hanahan v. Lucassen, 764 F. Supp. 194, 197-98 (D.D.C. 1991) ("Nothing in § 501 or the entire Labor Management Reporting and Disclosure Act, 19 U.S.C. § 401 *et seq.*, expressly prohibits union fund payment for the defense of union officials in derivative suits."). Accordingly, Mr. Brown and Mr. Gonzalez's fourth and fifth objections are overruled.

### III. CONCLUSION

Having carefully reviewed all the written and oral arguments for and against final approval of the Settlement Agreement, determined the Settlement Agreement is fair, reasonable, and adequate, and considered and overruled each objection, the Court concludes that the Settlement Agreement should receive final approval.

**IT IS, THEREFORE, ORDERED** that:

1. The Joint Motion for Final Approval of Class Action Settlement Agreement and Release, (Doc. No. 121), is **GRANTED**.

2. The North Carolina Litigation and all claims, counterclaims, and third-party claims are dismissed with prejudice as to all defendants and third-party defendants. The Parties are to bear their own costs, except as otherwise provided in the Settlement Agreement and Release.

3. The Court finds that the Settlement Agreement and Release is fair, reasonable, and adequate as to each member of the Settlement Classes. The Settlement Agreement and Release is finally **APPROVED** in all respects. The Parties are directed to implement the Settlement Agreement and Release in accordance with the terms and conditions of the Settlement Agreement and Release.

4. As set forth in Paragraph 6 of the Settlement Agreement and Release, USAPA Officers, past and present, and Board of Pilot Representatives members, past and present, agree to waive, relinquish and forego any and all claims and/or potential claims against USAPA for indemnification under the USAPA Constitution & Bylaws, except for the defendants in LMRDA action I and LMRDA action II until USAPA has fully reimbursed the attorneys' fees and expenses incurred by defendants in LMRDA action I and LMRDA action II. As to all other USAPA officers, past and present, and Board of Pilot Representatives members, past and present, the release is effective immediately.

5. As set forth in Paragraphs 14 through 19 of the Settlement Agreement and Release, the Released Parties, individually and as Settlement Classes, absolutely and unconditionally release and forever discharge the Parties from any and all Released

Claims[5] that the Released Parties, individually and as Settlement Classes, directly, indirectly, derivatively, or in any other capacity ever had, now have or hereafter may have.

6. As set forth in Paragraph 8 of the Settlement Agreement and Release, effective today and until three years from today, USAPA and any officer, agent, or employee of USAPA are hereby **ENJOINED** from authorizing, permitting, or causing USAPA to spend any USAPA funds on any type of expenditure relating to, whether directly or indirectly, any merger or seniority-related matter, including but not limited to any litigation directly or indirectly related to any merger or seniority-related matter, except as to those matters provided in Paragraph 7 of the Settlement Agreement and Release.

7. Neither the Settlement Agreement and Release nor the terms of the Settlement Agreement and Release shall be offered or received in any action or proceeding for any purposes, except: (a) in an action or proceeding arising under the Settlement Agreement and Release or arising out of or relating to the Preliminary Approval Order or the Order; (b) in any action or proceeding where the releases provided pursuant to the Settlement Agreement and Release may serve as a bar to recovery; or (c) in any action or proceeding to determine the availability, scope, or extent of insurance coverage (or reinsurance related to such coverage) for the sums expended for the settlement and defense of the North Carolina Litigation and the Arizona Litigation.

---

[5] As set forth in Paragraph 16 of the Settlement Agreement and Release, the Released Claims do not include the claims in <u>Karas v. Allied Pilots Association, et al.</u>, 3:16-cv-00168-TJM-DEP, pending in the U.S. District Court of the Northern District of New York.

8. Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of the Settlement Agreement and Release; and (b) all Parties hereto for the purpose of construing, enforcing and administering the Settlement Agreement and Release.

9. This Order shall not be considered or used as an admission, concession, or declaration by or against the Released Parties of any fault, wrongdoing, breach or liability and this Court makes no such finding or determination. Neither the Settlement Agreement and Release nor any of the proceedings in connection therewith shall be offered or received in evidence for any purpose, except that the Released Parties may submit this Order, Injunction and Judgment to support a claim of *res judicata*, collateral estoppel, release or any theory of claim or issue preclusion, or they may submit this Order in any action to enforce the injunctive provisions above.

10. All other pending motions before the Court (Doc. Nos. 87, 88, 96, 104, and 105) are **DISMISSED** as moot.

Signed: September 7, 2016

_____

Robert J. Conrad, Jr.
United States District Judge